UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND TURNER, M.D.,<br>6121 Western Avenue, NW<br>Washington, DC 20015<br>and<br><br>MARIA L. TURNER, M.D.,<br>6121 Western Avenue, NW<br>Washington, DC 20015<br><br>Plaintiffs,<br><br>vs.<br><br>UBS FINANCIAL SERVICES INC.,<br>1200 Harbor Boulevard<br>Weehawken, NJ 07086<br>and<br><br>UBS SECURITIES, LLC,<br>201 Tresser Blvd.<br>One Stamford Forum – 2d Floor<br>Stamford, CT 06901<br>Defendants. | Case No.<br><br>Judge:<br><br>Deck Type: |

**NOTICE OF REMOVAL**

Defendants UBS Financial Services Inc. ("UBS Financial") and UBS Securities, LLC

("UBS Securities"), by counsel,  hereby give notice of removal of the above-captioned action to

the United States District Court for the District of Columbia, pursuant to 28 U.S.C. §§ 1441 and

1446.  Removal is based on diversity jurisdiction.

**INTRODUCTION**

1.      Plaintiff initiated this action through a Complaint in the Superior Court of the

District of Columbia.  In accordance with 28 U.S.C. § 1446(a), a complete copy of the file in this

action is attached as Exhibit A.  No further proceedings have taken place as of the date of this

Notice.

2.      In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty (30) days of the receipt through service of Plaintiff's Complaint. Plaintiffs filed the Complaint on or about June 27, 2007.  Defendants received a copy of the Complaint on or about June 27, 2007.

3.      In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being filed with the Superior Court of the District of Columbia, and served on Plaintiffs at Janet K. DeCosta, Esq. Law Offices of Janet K. DeCosta,1825 Eye Street, N.W., Suite 400, Washington, D.C. 20006.

4.      Removal of this action to the United States District Court for the District of Columbia is proper pursuant to 28 U.S.C. § 1441(a).  This is the district and division "embracing the place where [the State court action] is pending."  28 U.S.C. § 1441(a).

5.      Defendants UBS Financial and UBS Securities expressly consent to removal by the filing of this Notice.

6.      This Court has original jurisdiction over this case based on diversity jurisdiction. None of the Defendants is a citizen of the same state as Plaintiffs and the purported amount in controversy exceeds $75,000.

**PARTIES**

7.      Plaintiff Raymond Turner is a resident of the District of Columbia. Complaint ¶ 1.

8.      Plaintiff Maria L. Turner is a resident of the District of Columbia.  Complaint ¶ 2.

9.      Defendant UBS Financial is a Delaware corporation whose principal place of business is in Weehawken, New Jersey.  Complaint ¶ 3.

10.     Defendant UBS Securities is a Delaware limited liability company whose principal place of business is in Stamford, Connecticut.  Complaint ¶ 4.

## BRIEF FACTS

11. On June 27, 2007, Plaintiffs filed a Complaint against UBS Financial and UBS Securities alleging that they engaged in negligent supervision, negligent retention, aided and abetted fraud and deceit, and violated the District of Columbia Consumer Protection Act. Complaint ¶¶ 36-62.

12. Plaintiffs allege that on or about November 2004, their financial advisor, Sean Denny ("Denny") of Weston Insurance Services & Associates of Laurel Maryland, presented them with a potential investment in the GLT Venture Fund, LLP ("GLT Fund"), a California based hedge fund managed by a third party. Complaint ¶¶ 7, 13.

13. Plaintiffs allege that Denny told Plaintiffs that Denny had communications with a former UBS Financial employee[1] located in California relating to the GLT Fund. Complaint ¶¶ 13-14.

14. Plaintiffs do not allege that they were Defendants' customers.

15. Plaintiffs do not allege that they opened any accounts with Defendants.

16. Plaintiffs do not allege that they deposited funds with Defendants.

17. Plaintiffs allege that on or about January 26, 2006, they directed a wire transfer of approximately $188,500 to Bank of America. Complaint ¶ 16.

18. Plaintiffs allege that the FBI has frozen the Bank of America account into which Plaintiffs deposited $188,500. Complaint ¶ 18.

19. The Complaint seeks $188,500 from Defendants, representing the money frozen in the Bank of America account, and other unspecified damages. Complaint p. 14.

## GROUNDS FOR REMOVAL

20.     Removal of a case to federal court is an issue of federal subject matter jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 (9th Cir. 1988).  The removal statute states:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).  In this case, removal is proper based on diversity jurisdiction.

21.     This action may be removed pursuant to 28 U.S.C. § 1441 because this Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Removal is appropriate, therefore, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

22.     District courts have original jurisdiction over civil actions where the matter in controversy: (a) exceeds $75,000, exclusive of interest and costs; and (b) is between citizens of different states.  28 U.S.C. § 1332.

23.     Plaintiffs allege that the Defendants are liable for $188,500 in compensatory damages.  *See* Complaint p. 14.  Accordingly, the amount in controversy exceeds $75,000.

24.     Plaintiffs are citizens of the District of Columbia.  Complaint ¶¶ 1-2.

25.     At the time Plaintiffs initially commenced this action, through the date of the filing of this Notice, the citizenship of the various Defendants was as follows:

i.  UBS Financial is a Delaware corporation whose principal place of business is Weehawken, New Jersey.  Complaint ¶ 3.

---

[1] Plaintiffs incorrectly allege that the former UBS employee worked at UBS Securities.  Complaint ¶ 8.

ii. UBS Securities is a Delaware limited liability company whose principal

place of business is in Stamford, Connecticut.  Complaint ¶ 4.

26.     None of the Defendants were, or are, citizens of the District of Columbia.  *See* 28

U.S.C. § 1332(c)(1). Accordingly Plaintiffs' dispute with the Defendants is between citizens of

different states.

WHEREFORE, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants remove the

proceeding titled *Raymond Turner, et al. v. UBS Financial Services Inc., et al.*, 2007 CA 004419

B, from the Superior Court of the District of Columbia, to the United States District Court of the

District of Columbia.

Respectfully Submitted,

  07/27/2007_____          __/s/ Robert P. Howard, Jr._____
Date                             Robert P. Howard, Jr., D.C. Bar # 456449
                                 William E. Donnelly, D.C. Bar # 358188
                                 Thomas J. McGonigle, D.C. Bar # 418945
                                 LECLAIR RYAN, A PROFESSIONAL CORPORATION
                                 1101 Connecticut Ave., NW, Suite 600
                                 Washington, DC  20006
                                 Phone (202) 659-6700
                                 Fax (202) 659-4130

                                 *Counsel for Defendants UBS Financial Services Inc.*
                                 *and UBS Securities, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of July, 2007, I mailed a true and correct copy of the

foregoing **NOTICE OF REMOVAL** by placing in the United States mail, postage prepaid to the

following:

Janet K. DeKosta, Esq.
Law Offices of Janet K. DeKosta
1825 Eye Street, N.W.
Suite 400
Washington, D.C.  20006
Phone:          (202) 638-3344
Facsimile:      (202) 824-8126


_/s/ Robert P. Howard, Jr._

E
07-1375
RJL

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RAYMOND TURNER<br>MARIA TURNER    110 V | UBS FINANCIAL SERVICES INC.<br>UBS SECURITIES LLC    88888 |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Janet K. DeKosta
1825 Eye Street, N.W., Suite 400
Washington, D.C.  20006
202-638-3344

Case: 1:07-cv-01375
Assigned To : Leon, Richard J.
Assign. Date : 7/27/2007
Description: General Civil

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE an x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/*<br>*Malpractice* | ○ C. *Administrative Agency*<br>*Review* | ○ D. *Temporary Restraining*<br>*Order/Preliminary*<br>*Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If<br>Administrative Agency is Involved) | Any nature of suit from any category may<br>be selected for this category of case<br>assignment.<br><br>*(If Antitrust, then A governs)* |

| ◉ E. *General Civil (Other)*    OR | ○ F. *Pro Se General Civil* |
|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or<br>defendant<br>☐ 871 IRS-Third Party 26<br>USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure<br>of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational<br>Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC<br>Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced &<br>Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☒ 850 Securities/Commodities/<br>Exchange<br>☐ 875 Customer Challenge 12 USC<br>3410<br>☐ 900 Appeal of fee determination<br>under equal access to Justice<br>☐ 950 Constitutionality of State<br>Statutes<br>☐ 890 Other Statutory Actions (if<br>not administrative agency<br>review or Privacy Act<br><br>**No Summons Issued** |

| G. *Habeas Corpus/* *2255* | H. *Employment* *Discrimination* | I. *FOIA/PRIVACY* *ACT* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA* *(non-employment)* | L. *Other Civil Rights* *(non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☐ 1 Original Proceeding  ⊗ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Negligent supervision, negligent retention, aiding and abetting fraud, DC Consumer Protection Act.    38 USC # 1441

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 188,500    Check YES only if demanded in complaint
JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 7/27/07    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## 2007 CA 004419 B TURNER, MD, RAYMOND Vs. UBS FINANCIAL SERVICES, INC

| **File Date** 06/27/2007 | **Case Status** Open | **Case Status Date** 06/27/2007 |
|---|---|---|
| | **Case Disposition** Undisposed | **Case Disposition Date** |

### Party Information

| Party Name | Party Alias(es) | Party Type | Attorney(s) | Attorney Phone |
|---|---|---|---|---|
| TURNER, MD, RAYMOND | | PLAINTIFF | DECOSTA, Ms JANET K | (202)824-8126 |
| TURNER, MD, MARIA L | | PLAINTIFF | | |
| UBS FINANCIAL SERVICES, INC | | Defendant | HOWARD, JR, Mr ROBERT P | (202)659-6700 |
| UBS SECURITIES, LLC | | Defendant | HOWARD, JR, Mr ROBERT P | (202)659-6700 |

### Case Schedule

| Date | Start Time | Event Type | Result |
|---|---|---|---|
| 09/28/2007 | 09:30 AM | Initial Scheduling Conference-60 | |

### Financial Entries

| Receipt # | Date | Received From | Amount Paid |
|---|---|---|---|
| 78612 | 07/19/2007 | HOWARD Jr, ROBERT P | 20.00 |

| Payment | | Fee | |
|---|---|---|---|
| Receipt Depositor | 20.00 | Cost | 20.00 |

| Receipt # | Date | Received From | Amount Paid |
|---|---|---|---|
| 76703 | 06/27/2007 | DECOSTA, Ms JANET K | 120.00 |

| Payment | | Fee | |
|---|---|---|---|
| Check | 120.00 | Cost | 120.00 |

### Docket Entries

| Date | Text |
|---|---|
| 07/20/2007 | Proof of Service to Order Granting Defendant's UBS Financial and UBS Securities Consent Motion For Extension of Time To File Response/Reply To Complaint submitted 07/20/2007 15:31. ksc. signed by J/Morin on 7/20/07 |
| 07/20/2007 | Order Granting Defendant's UBS Financial and UBS Securities Consent Motion For Extension of Time To File Response/Reply To Complaint submitted 07/20/2007 15:31. ksc. signed by J/Morin on 7/20/07 |
| 07/20/2007 | Order Granting Motion to Extend Time to Respond/Reply to Complaint Entered on the Docket on 7/20/07; order SIGNED by J. Morin on 7/20/07; order EFILED via Efiling for |

|            | Courts on 7/20/07; parties SERVED electronically via Efiling for Courts on 7/20/07. Defendants shall have until Aug. 9 to respond or reply to Complaint. (esr) |
|------------|------------|
| 07/17/2007 | Defendants UBS Financial Services, Inc and UBS Securities, LLC's Corporate Disclosure Statement Filed. Submitted 07/17/2007 13:35 jhc. Attorney: HOWARD Jr, Mr ROBERT P (456449) UBS FINANCIAL SERVICES, INC (Defendant); UBS SECURITIES, LLC (Defendant); |
| 07/17/2007 | Defendants UBS Financial Services, Inc and UBS Securities, LLC's Consent Motion for Extension of Time to File Response/Reply to Complaint Filed. Submitted 07/17/2007 13:25 jhc. Attorney: HOWARD Jr, Mr ROBERT P (456449) UBS FINANCIAL SERVICES, INC (Defendant); UBS SECURITIES, LLC (Defendant); Receipt: 78612 Date: 07/19/2007 |
| 06/29/2007 | Proof of Service Method : Service Issued Issued : 06/28/2007 Service : Summons Issued Served : 06/27/2007 Return : 06/29/2007 On : UBS FINANCIAL SERVICES, INC Signed By : Renee Rice Reason : Proof of Service Comment : Tracking #: 5000033719 |
| 06/29/2007 | Affidavit of Service of Summons & Complaint on UBS FINANCIAL SERVICES, INC (Defendant); |
| 06/29/2007 | Proof of Service Method : Service Issued Issued : 06/28/2007 Service : Summons Issued Served : 06/27/2007 Return : 06/29/2007 On : UBS SECURITIES, LLC Signed By : Renee Rice Reason : Proof of Service Comment : Tracking #: 5000033720 |
| 06/29/2007 | Affidavit of Service of Summons & Complaint on UBS SECURITIES, LLC (Defendant); |
| 06/28/2007 | Issue Date: 06/28/2007 Service: Summons Issued Method: Service Issued Cost Per: $ UBS FINANCIAL SERVICES, INC 1090 VERMONT AVENUE NW WASHINGTON, DC 20005 Tracking No: 5000033719 UBS SECURITIES, LLC 1090 VERMONT AVENUE NW WASHINGTON, DC 20005 Tracking No: 5000033720 |
| 06/27/2007 | Event Scheduled Event: Initial Scheduling Conference-60 Date: 09/28/2007 Time: 9:30 am Judge: MORIN, ROBERT E Location: Courtroom 517 |
| 06/27/2007 | Complaint for Fraud Filed Receipt: 76703 Date: 06/27/2007 |

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

RAYMOND TURNER, M.D.                          )
    6121 Western Avenue, NW              )
    Washington DC 20015                  )
                        )
       and                              )
                        )
MARIA L. TURNER, M.D.                         )
    6121 Western Avenue, NW              )
    Washington, DC 20015                 )
                        )
       Plaintiffs                       )
                        )
      v.                               )
                        )     Civil Action No. 07-0004319
UBS FINANCIAL SERVICES, INC.                  )
Serve: Registered Agent                       )
      Corporation Service Company      )
      1090 Vermont Avenue, NW          )
      Washington, DC 20005             )
                        )
       and                              )
                        )
UBS SECURITIES, LLC                           )
Serve: Registered Agent                       )
      Corporation Service Company      )
      1090 Vermont Avenue, NW          )
      Washington, DC 20005             )
                        )
       Defendants.                      )
                        )

RECEIVED
Civil Clerk's Office

JUN 2 7 2007

Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

Plaintiffs Raymond Turner, M.D. and Maria L. Turner, M.D. (jointly the "Plaintiffs"), by and

through undersigned counsel, bring this action against Defendants UBS Financial Services, Inc. and

UBS Securities, LLC (jointly the "Defendants"), for damages arising out of the Defendants' tortious

conduct, and state as follows:

## THE PARTIES

1.      Plaintiff Raymond Turner ("Dr. R. Turner") is a resident of Washington, DC. He is a 74-year-old retired internist who currently teaches as a volunteer at George Washington University Medical School.

2.      Plaintiff Maria L. Turner ("Dr. M. Turner"), the wife of Dr. R. Turner, is a resident of Washington, DC. She is 69-years-old and currently is employed as a clinical research dermatologist at the National Institutes of Health.

3.      Defendant UBS Financial Services, Inc. ("UBS Financial"), a Delaware corporation with its principal place of business in Weehawken, New Jersey, is doing business in the District of Columbia. At all times relevant herein, UBS Financial was a securities broker-dealer, licensed to do business in the District of Columbia. UBS Financial holds itself out to the public as "[a] world-leading wealth management company."

4.      Defendant UBS Securities, LLC ("UBS Securities"), a Delaware limited liability company with its principal place of business in Stamford, Connecticut, has been doing business in the District of Columbia, since, upon information and belief, 1991. At all times relevant herein, UBS Securities was a securities broker-dealer, licensed to do business in the District of Columbia. Hereinafter, UBS Securities and UBS Financial are referred to jointly as "UBS" or "Defendants."

2

## JURISDICTION

5.      This Court has jurisdiction over the subject matter of this action pursuant to D.C. Code Section 11-921.

6.      This Court has personal jurisdiction over the Defendants pursuant to D.C. Code Sections 13-334 and 13-423.

## FACTUAL ALLEGATIONS

**I.      Background of the GLT Fund Ponzi Scheme and its UBS Account Relationship**

7.      Upon information and belief, Keith Gilabert ("Gilabert") founded the CMG Capital Management Group Holding Company, LLC, CMG Management Group, Inc. (jointly "CMG"), and the GLT Venture Fund, LLP ("GLT Fund"), a hedge fund formerly operated out of California. The GLT Fund existed from in or about July 2002 through late January 2005.

8.      In or about June 2001, UBS employed Justin Paperny ("Paperny") as a registered representative of the firm and, at some point, gave him the title of "UBS Financial Advisor and Vice President." Upon information and belief, Paperny remained employed with UBS until at least February 2005.

9.      In or about July 2002, Paperny established an account at UBS for the GLT Fund. Paperny and a second UBS Financial Advisor and Vice President served as the Co-Account Managers on the GLT Fund account.

10.    Upon information and belief, the UBS-GLT Fund account relationship continued, without interruption, from in or about July 2002 through in or about January 2005.

## II.    UBS Financial Advisor Paperny's Guilty Plea

11.    On January 21, 2007, Paperny entered into a Plea Agreement (the "Agreement") in the case captioned *United States of America v. Justin Paperny*, Case No. CR 07-00060 (C.D. Ca.). Paperny pleaded guilty to a violation of Title 18, United Sates Code, Section 371 and admitted, *inter alia*, that he engaged in a conspiracy to commit mail fraud, wire fraud, and securities fraud in connection with the GLT Fund while he was employed by UBS.[1] Incorporated within the Agreement was a Statement of Facts ("S/F ¶___"), executed by Paperny, describing Paperny's role, as well as that of UBS, in the scheme to defraud investors such as the Plaintiffs. In pertinent part, Paperny admitted to the following:

a.    Between in or about September 2000 and January 2005, more than 40 investors throughout the United States invested more than $7 million with CMG and in the GLT Fund, all based on false representations. S/F ¶b.

b.    In or about July 2002, CMG transferred the assets of the GLT Fund into an account set up for the GLT Fund at UBS. S/F ¶d.

c.    Paperny served as Co-Account Manager of the GLT Fund account at UBS with an unidentified UBS Senior Vice-President. S/F ¶d.

---

[1]    Paperny did not specifically identify UBS in the Agreement, although he was employed by the firm at the time of the events described in the Agreement.

4

d.    Paperny's co-conspirator Gilabert made trades through several brokerage firms, including UBS, which also acted as the custodian of the assets of the GLT Fund and as the trading clearing house for all GLT Fund trades.  S/F ¶d.

e.    Between no later than April 2002 through January 2005, Paperny conspired with Gilabert to mislead current and prospective investors with regard to, among other things, (I) the investment strategy and risk that would be used by the GLT Fund in making trades; (ii) the oversight of the GLT Fund by UBS; and (iii) UBS's endorsement of Gilabert's qualifications and ability to effectively manage trading activity of the GLT Fund.  S/F ¶g.

f.    In or about October 2004, Paperny spoke with "S.D.," who, upon information and belief, is Sean Denny ("Denny"). Paperny sent UBS paperwork to Denny in order for Denny's clients to open UBS accounts.  S/F ¶k.

g.    In or about October 2004, Paperny sent Denny an electronic communication, which represented, *inter alia*, that UBS and Paperny had a "well-tested system in place to work with hedge funds." S/F ¶k.

h.    Paperny ". . . understood that the electronic communication, sent by a representative from [UBS] would create the misimpression that GLT was a reputable hedge fund." S/F ¶k.

5

i.      Paperny's Co-Account Manager was aware of and endorsed a number of Paperny's fraudulent activities.  S/F ¶h.

j.      Paperny repeatedly informed UBS management and supervisory personnel, among other things, that: (I) the GLT Fund was performing poorly and (ii) the GLT Fund was not following its stated investment strategy.  S/F ¶I.

k.      Despite being aware that the GLT Fund had suffered enormous losses, more than one UBS manager authorized and encouraged Paperny to continue moving investor money to the GLT Fund account because the high volume in trading and margin in the GLT Fund account generated extremely profitable commissions and fees for UBS. S/F ¶I.

## III.    Plaintiffs' Investment in the GLT Fund

12.     At all times pertinent herein, Denny served as the Plaintiffs' financial advisor.

13.     In or about November 2004, Denny presented the GLT Fund to the Plaintiffs as a quality investment.  Denny informed the Plaintiffs that, based on information provided by Paperny, among others, he believed that UBS played a significant role in the GLT Fund.  Denny further relayed to the Plaintiffs that UBS's participation in the investment, as described by Paperny, served as indicia that the GLT Fund was a legitimate investment, or words to that effect.

14.     Denny also informed the Plaintiffs that he communicated directly with Paperny, who, according to Denny, held himself out to be the principal UBS representative involved in the UBS-GLT

Fund relationship. Denny apprised the Plaintiffs that he spoke with Paperny on three or four occasions in late 2004 regarding CMG and the GLT Fund. Paperny, according to Denny, confirmed and verified that performance of the GLT Fund was exceptional. Paperny also reported on the amount of money then invested in the GLT Fund, the size of the GLT Fund, the credentials of the people managing the GLT Fund, the number of years of the GLT Fund's existence, and the soundness of the GLT Fund's investment strategy. In addition, Paperny, as reported by Denny to the Plaintiffs, confirmed the presence of UBS checks and balances to protect investors' money. Denny, swayed by Paperny's representations and the involvement, encouraged the Plaintiffs to invest in the GLT Fund.

15.    Upon information and belief, Paperny provided Denny with enrollment kits containing the necessary paperwork for opening new UBS accounts in the GLT Fund. Denny, in turn, provided the kits to the Plaintiffs. Included with the materials was a brochure entitled "Safety of Client Assets Held at UBS Paine Webber," which provided peace of mind to Plaintiffs, given UBS's preeminence in the brokerage industry and blue-chip standing.

16.    After carefully considering Paperny's representations to Denny, Paperny's involvement in the GLT Fund, and UBS's reported oversight of the Fund's assets, on or about January 26, 2005, the Plaintiffs directed a wire transfer of approximately $188,500 to Bank of America, with the understanding that their funds would be deposited into the GLT Fund account at UBS. Unbeknownst to the Plaintiffs, however, prior to January 26, 2005, the GLT Fund account at UBS had been frozen pursuant to a court order.

17.    Paperny, acting in his capacity as agent and employee of UBS, made false representations to Denny for the purpose of inducing investors like the Plaintiffs to invest in the GLT Fund.  Paperny was fully aware that the GLT Fund was a complete sham and that the Plaintiffs would never see their money again.

18.    In or about February 2005, the Plaintiffs learned that the FBI had frozen the Bank of America account to which they had wired their investment.  They have been unable to recoup their investment of $188,500.

## IV.    The Role of UBS in the GLT Ponzi Scheme

19.    At all times pertinent herein, UBS served as custodian of the assets of the GLT Fund.

20.    At all times pertinent herein, UBS acted as the trading clearing house for GLT Fund trades.

21.    At all times pertinent herein, UBS earned fees and/or commissions as a result of its account relationship with the GLT Fund.

22.    At all times pertinent herein, UBS employees served as Co-Account Managers for the GLT Fund.

23.    At all times pertinent herein, UBS had supervisory responsibilities over Paperny and his Co-Account Manager.

24.     At all times pertinent herein, UBS had supervisory and compliance responsibilities over Paperny and his Co-Account Manager to ensure that neither was participating in or enabling fraudulent conduct.

25.     UBS failed to meet its supervisory responsibilities over Paperny, thereby allowing him the unfettered ability to communicate with Denny and others to promote the GLT Fund.  Such unsupervised communications with Denny and others was integral to the success of the Ponzi Scheme.

26.     UBS's failure to supervise Paperny allowed him to induce others, including the Plaintiffs, to invest money in the GLT Fund.

27.     UBS earned enormous fees and commissions as a result of the trading in the GLT Fund. According to Paperny, at least one UBS employee manager encouraged the deposit of additional investor money into the GLT Fund to facilitate the continued high volume of trading, which, in turn, rewarded UBS with yet more fees and commissions.

28.     UBS had both supervisory and compliance responsibilities with respect to the GLT Fund account.

29.     UBS knew or should have known that the GLT Fund was not following its stated investment objectives, yet failed to take any steps to address the potential problem for the underlying investors of the GLT Fund.

30.    The participation of Paperny and his Co-Account Manager in the establishment and management of the GLT Fund account at UBS provided an aura of legitimacy to the GLT Fund, although the GLT Fund was a Ponzi Scheme.

31.    The participation of Paperny and/or his the Co-Account Manager with Gilabert in managing the GLT Fund, within and under UBS's supervisory and compliance structure, allowed the Ponzi Scheme to continue for approximately two-and-one-half (2 ½) years, until January 2005.

32.    UBS was aware, or should have been aware, that the GLT Fund was part of a scheme to defraud investors.  For example, between July 2002 and January 2005, UBS should and presumably would have monitored Paperny's e-mail and mail communications sent through the UBS-monitored electronic mail and mail systems.  Had UBS monitored Paperny's mail, UBS would have discovered Paperny's misrepresentations to investors, potential investors, and advisors such as Denny.

33.    Had UBS monitored Paperny's written communications, it could have warned potential investors such as the Plaintiffs, and advisors such as Denny, that the GLT Fund was frozen and/or that the GLT Fund was not as Paperny and others represented.

34.    UBS failed to inform Denny that the UBS-GLT Fund account had been frozen.  Had UBS, directly or through Paperny, so informed Denny, Denny could have advised the Plaintiffs not to invest in the GLT Fund.

35.    But for the UBS connection to the GLT Fund and UBS's "seal of approval," as explained by Paperny, the Plaintiffs would not have invested in the GLT Fund.

## COUNT I
### (Negligent Supervision)

36.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 as if fully set forth herein.

37.     At all times relevant herein, UBS owed the duty to the investing public, including the Plaintiffs, to use reasonable care in selecting and retaining employees competent and fit for the work assigned to them.

38.     At all times relevant herein, UBS had the duty to properly train and supervise its employees, including Paperny.

39.     At all times relevant herein, UBS had the duty to properly investigate and correct improper activities by its employees, including Paperny.

40.     Paperny has admitted that, while he was an employee of UBS, he engaged in fraudulent conduct and in a criminal conspiracy.

41.     UBS knew or should have known that Paperny was engaged in fraudulent conduct and/or was conspiring with others to defraud the investing public, including the Plaintiffs.

42.     Notwithstanding its actual and/or constructive knowledge of Paperny's tortious conduct, UBS failed to adequately supervise him.

43.     UBS failed to supervise Paperny in accordance with the rules and regulations of the state, federal, and/or self-regulatory authorities.

44.     As a direct and proximate result of the negligent supervision by UBS, the Plaintiffs suffered severe financial damages in an amount not less than $188,500.

## COUNT II
### (Negligent Retention)

45.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 44 as if fully set forth herein.

46.    Paperny was unfit to serve as a UBS Financial Advisor and Vice President.

47.    UBS was required to refrain from retaining the services of an unfit employee, such as Paperny.

48.    UBS knew or should have known that Paperny was engaged in a fraudulent course of conduct and/or was conspiring with others to defraud the investing public, such as the Plaintiffs.

49.    UBS failed in its duty to retain employees competent and qualified to act in accordance with the rules and regulations of the brokerage industry when it retained the services of Paperny.

50.    As a direct and proximate result of the negligent retention of Paperny by UBS, the Plaintiffs suffered severe financial damages in an amount not less than $188,500.

## COUNT III
### (Aiding and Abetting Fraud and Deceit)

51.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 50 as if fully set forth herein.

52.    Paperny has admitted that he engaged in a fraudulent course of conduct and in a conspiracy, directed to defrauding the investing public, such as the Plaintiffs.

53.    At all times material herein, UBS aided and abetted its employee's fraud and conspiracy in that it, *inter alia*:

      a.    provided the semblance of legitimacy to the GLT Fund;

b.    turned a blind eye to red flags which indicated that the GLT Fund was a Ponzi Scheme, although it knew or should have known that such red flags may have been indicia that the GLT Fund was not legitimate;

c.    allowed the GLT Fund to trade in a manner contrary to its stated investment objectives for approximately two and one half years, although it knew or should have known that the failure of the GLT Fund could cause financial harm to the investors;

d.    served as custodian of the assets of the GLT Fund for approximately two and one half years;

e.    allowed Paperny and others to operate without the required supervision for approximately two and one half years, although it was required to provide supervision according to the rules and regulations of the state, federal, and self-regulatory authorities;

f.    failed to monitor Paperny's communications, such as those sent to Denny; and

g.    allowed its employee Paperny and others to engage in fraudulent conduct for approximately two and one half (2 ½) years, all the while enjoying remuneration from the fraud.

54.    UBS's assistance to Paperny was integral to his ability to continue to defraud and conspire with others to defraud investors, such as the Plaintiffs.

55.    As a direct and proximate result of the negligence of UBS, the Plaintiffs suffered severe financial damages.

13

## COUNT IV
### (Violation of District of Columbia Consumer Protection Act, §28-3901 *et seq.*)

56.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 55 as if fully set forth herein.

57.    Plaintiffs are "persons" as defined by the District of Columbia Consumer Protection Act, ("DCCPA") §28-3901(a)(2).

58.    UBS is a "merchant" as defined by DCCPA §28-3901(a)(3).

59.    UBS engaged in a "trade practice" as defined by DCCPA §28-3901(a)(6).

60.    UBS provided "goods and services" as defined by DCCPA §28-3901(a)(7).

61.    UBS engaged in tortious conduct, including but not limited to, negligent supervision, negligent retention, and aiding and abetting fraud, all in violation of the DCCPA.

62.    As a direct and proximate result, the Plaintiffs suffered damages.

**WHEREFORE**, for the reasons set forth above, the Plaintiffs demand judgment against all Defendants, jointly and severally, as follows:

1.    A judgment awarding damages for losses actually suffered, in an amount not less than $188,500 together with interest and punitive damages, for the wrongs complained of herein;

2.    A judgment awarding the Plaintiffs reasonable attorney's fees and expenses; and

3.    Such other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands trial by jury.

Dated: June 26, 2007

JANET K. DeCOSTA, P.C.

By:

Janet K. DeCosta, Esq.
D.C. Bar Number 439674
1825 Eye Street, N.W.
Suite 400
Washington, D.C. 20006
Tel: 202-638-3344
Fax: 202-824-8126
E-mail: JKDeCosta@jkdcpc.com

Plaintiffs' Counsel

R:\Turner, Raymond\ComplaintFinal.wpd

15

**IN THE SUPERIOR COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAYMOND TURNER, M.D., | |
| and | |
| MARIA L. TURNER, M.D., | |
| Plaintiffs, | |
| vs. | Civil Action No. 07-0004419-B |
| UBS FINANCIAL SERVICES, INC., | |
| and | |
| UBS SECURITIES, LLC, | |
| Defendants. | |

**DEFENDANTS UBS FINANCIAL SERVICES, INC. AND UBS SECURITIES, LLC'S**
**CONSENT MOTION FOR EXTENSION OF TIME**
**TO FILE RESPONSE/REPLY TO COMPLAINT**

Defendants UBS Financial Services, Inc. ("UBS Financial") and UBS Securities, LLC ("UBS Securities"), by counsel, hereby move this Court, pursuant to Rules 7 and 55(a)(1) of the District of Columbia Superior Court Rules of Civil Procedure, to grant a twenty three day extension of time, or until August 9, 2007, to file a response and or reply to the Complaint in the above-referenced matter. Neither UBS Financial nor UBS Securities has made a prior request for this purpose. Undersigned counsel has only recently been retained to represent UBS Financial and UBS Securities in this matter. UBS Financial and UBS Securities request this extension due to counsel's schedule and the need for additional time to research UBS Financial and UBS Securities' response/reply to the Complaint. Counsel for Plaintiff was contacted and consented to this extension.

Respectfully Submitted,


_07/17/2007_____          __/s/ Robert P. Howard, Jr._____
Date                              Robert P. Howard, Jr., D.C. Bar # 456449
                                  William E. Donnelly, D.C. Bar # 358188
                                  Thomas J. McGonigle, D.C. Bar # 418945
                                  LeClair Ryan, A Professional Corporation
                                  1101 Connecticut Ave., NW, Suite 600
                                  Washington, DC  20006
                                  Phone (202) 659-6700
                                  Fax (202) 659-4130

                                  *Counsel for Defendants UBS Financial and
                                  UBS Securities*

**IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA**

RAYMOND TURNER, M.D.,

and

MARIA L. TURNER, M.D.,

        Plaintiffs,

        vs.                     Civil Action No. 07-0004419-B

UBS FINANCIAL SERVICES, INC.,

and

UBS SECURITIES, LLC,

        Defendants.

**ORDER GRANTING EXTENSION OF TIME TO RESPOND/REPLY**

This matter comes before the Court on Defendants UBS Financial and UBS Securities' Consent Motion for Extension of Time to File Response/Reply to Complaint ("Consent Motion").

Being fully advised in the premises, and for the reasons stated in the Consent Motion, having found good cause for such a request, it is hereby

ORDERED, that Defendants UBS Financial and UBS Securities' Consent Motion for Extension of Time to File Response/Reply to Complaint is GRANTED and UBS Financial and UBS Securities shall have until on or before August 9, 2007, to respond, or otherwise reply, to the Complaint in the above-referenced matter.

                                 _____
                                 Judge

Dated: _____

Copies to: Parties/Counsel of Record

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2007, a copy of the foregoing was sent via electronic means to the individuals identified on the Court's service list.


     /s/ Robert P. Howard, Jr.
       Robert P. Howard, Jr.

**IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RAYMOND TURNER, M.D.,** | |
| **and** | |
| **MARIA L. TURNER, M.D.,** | |
| **Plaintiffs,** | |
| **vs.** | **Civil Action No. 2007 CA 004419 B** |
| **UBS FINANCIAL SERVICES, INC.,** | |
| **and** | |
| **UBS SECURITIES, LLC,** | |
| **Defendants.** | |

**ORDER GRANTING EXTENSION OF TIME TO RESPOND/REPLY**

This matter comes before the Court on Defendants UBS Financial and UBS Securities'

Consent Motion for Extension of Time to File Response/Reply to Complaint ("Consent

Motion"). The Court finds good cause to grant this motion.

Wherefore, for the reasons stated, it is this **20th day of July 2007**, hereby

**ORDERED**, that Defendants UBS Financial and UBS Securities' Consent Motion for

Extension of Time to File Response/Reply to Complaint is **GRANTED** and UBS Financial and

UBS Securities shall have until on or before August 9, 2007, to respond or otherwise reply to

the Complaint in the above-referenced matter.

_____
Judge Robert E. Morin
(Signed in chambers)

Copies to:

Robert P. Howard
William E. Donnelly
Thomas J. McGonigle
1101 Connecticut Avenue, NW
Suite 600
Washington, DC 20006

Janet K. DeCosta
1825 Eye Street, NW
Suite 400
Washington, DC 20006